**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | ) | |
| | ) | **No. 13 CR 328** |
| v. | ) | |
| | ) | **Hon. Samuel Der-Yeghiayan** |
| **ABDELLA TOUNISI,** | ) | |
| Defendant. | ) | |

**ABDELLA TOUNISI'S RESPONSE TO THE GOVERNMENT'S
MOTION FOR A SUPPLEMENTAL PROTECTIVE ORDER
<u>TO GOVERN CLASSIFIED DISCOVERY</u>**

Abdella Tounisi, through his attorney, Molly Armour, in response to the

Government's motion to compel security clearance of defense counsel and for a

supplemental protective order, states as follows:

***A.*** ***The Discovery Disputes In This Case Cannot Be Relieved By the
Proposed Protective Order***

1.  The Government's motion for a supplemental protective order is two-fold.

    First the Government seeks to compel defense counsel to obtain a security

    clearance. Such a motion is moot as counsel is in the process of applying for a

    security clearance.

2.  Second, the Government seeks to advance the position that the proposed

    protective order sufficiently balances the constitutional rights of Mr. Tounisi

    against asserted national security issues. It does not. Mr. Tounisi strongly

    objects to the manner in which the Government is seeking to handle

    discoverable information, as the proposed Supplemental Protective Order

does not provide a means for allowing Mr. Tounisi to meaningfully review the evidence against him and only exacerbates the ongoing tension between the Government's desire to shroud the evidence in secrecy and Mr. Tounisi's Fifth and Sixth Amendment rights to effective representation, a fair and speedy trial, due process, and meaningful participation in his defense.

3.  Some background may be helpful in resolving issues relating to the classified information in this case. The Government alleges that Abdella Tounisi attempted to go to Syria and fight against the government of Bashar al-Assad by joining the ranks of Jahabat Al-Nusrah, a recently designated Foreign Terrorist organization at the behest of an FBI online undercover employee. Dkt. #1. Evidence in this matter was obtained, in part, pursuant to the Foreign Intelligence Surveillance Act (FISA). Dkt. #6. Initial discovery reveals that the Government had been closely watching Abdella Tounisi for a substantial period of time, including wiretapping his family's phones. On April 19, 2013, Abdella Tounisi was arrested at O'Hare airport, and he has been detained ever since.

4.  In the intervening five months, counsel has received very limited discovery—just 21 discs of electronic data—despite the Government's assertion that discovery in this matter is voluminous and complex. Moreover, a substantial portion of the limited discovery tendered to Mr. Tounisi focuses on the quasi-related matter of *United States v. Adel Daoud*, 12 CR 723. Thus, the bulk of discovery directly involving Abdella Tounisi remains unseen.

5. While the Government has communicated to counsel that some additional discovery relating to wiretapped conversations will be forthcoming, the remainder of the iceberg remains submerged in a classified morass.

6. To compare, five months into Mr. Daoud's case—involving far more serious charges than the instant matter—the Government had already produced approximately 70 discovery disks. *See United States v. Adel Daoud*, Unopposed Petition for the Appointment of Counsel, 12 CR 723 (Dkt. #37, ¶ 4). As both matters involve evidence obtained via FISA (and, potentially, the FISA Amendments Act), it is unclear why the Government cannot make an equally strong attempt to declassify materials in the instant matter. *See* Dkt. #6; *United States v. Adel Daoud*, 12 CR 723, Dkt. #9.

7. In numerous conversations with counsel for the Government, undersigned counsel has attempted to glean the barest of information regarding the volume and nature of discovery that is warehoused in classified status. Thus far, the Government has been unable or unwilling to even provide even a generalized outline of the categories of discovery or an approximation of the quantity of classified information. This opacity makes narrowing the issues significantly more complicated because what the Government is not providing remains an "unknown unknown."

8. One matter that is clear is that the outstanding classified information contains materials that are discoverable under Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83 (1963). This

discoverable information is relevant, material, and helpful to the defense. The withheld material includes, inexplicably, *Mr. Tounisi's own statements.*

**B.    *The Government Has Refused to Provide Discoverable Evidence***

9.    While Mr. Tounisi sits behind bars with no power to obtain the evidence necessary to defend himself, the Government can declassify evidence, seemingly quickly and effortlessly. On May 2, 2013, Magistrate Judge Daniel Martin, agreeing with the recommendation of the U.S. Pretrial Services Office, granted Abdella Tounisi a recognizance bond, with his father acting as third-party custodian. Dkt. # 13, 29, 30. The Government immediately appealed; the appeal was heard the following day before the presiding emergency district court judge. Dkt. # 11. Within the intervening 24 hours, the Government swiftly declassified four recorded telephone conversations of Mr. Tounisi's family members to use against him at the appeal hearing.

10.    It thus appears that when it benefits the Government, declassification occurs with speed and ease. But when the Defendant seeks to know the evidence against him, the Government asserts it cannot or will not seek declassification. This different standard certainly makes it seem that the Government is using the guise of classification as a tactic to warehouse the bulk of necessary discoverable information out of reach from Mr. Tounisi. The Government is manipulating its classification power to interfere with Mr. Tounisi's fundamental rights and to gain an unfair advantage in the litigation. Such selective declassification abridges Mr. Tounisi's rights to a

fair trial, effective assistance of counsel, and due process as secured by the Fifth and Sixth Amendments to the Constitution.

11. Congress never intended the Classified Information Protection Act (CIPA) to be utilized as a prosecutorial weapon. Instead, CIPA is a procedural mechanism principally enacted as a prophylactic measure to prevent "graymail"—that is "situations where a defendant may seek to introduce tangentially related classified information solely to force the prosecution to dismiss the charges against him." Edward C. Liu & Todd Garvery, Congressional Research Serv., Protecting Classified Information and the Rights of Criminal Defendants: The Classified Information Procedures Act 1 (2012). Such is not the circumstance here. Mr. Tounisi merely seeks to know the evidence against him and meaningfully participate in his own defense.

12. In other jurisdictions, declassifying key documents has not proven nearly so difficult or contentious. *See United States v. Rahman*, 861 F. Supp. 247 (S.D.N.Y. 1994) (government declassified and produced intercepts of defendants' own communications). Accord *United States v. Usama bin Laden*, 126 F. Supp.2d 264 (S.D.N.Y. 2000) (embassy bombings case), *United States v. Sattar,* 272 F. Supp. 2d 348 (S.D. N.Y. 2003) (declassifying FISA intercepts spanning a decade), *United States v. Shah,* 05 Cr. 673 (LAP) (S.D.N.Y. 2004).

13. Yet, because of the Government's exclusive control over whether evidence is declassified and refusal to provide discoverable information, the parties here have been unable to proceed expeditiously with discovery in this case.

**C.     *The Government's Refusal to Provide Discoverable Evidence Threatens Mr. Tounisi's Fundamental Constitutional Rights***

14. While counsel is in the process of applying for a security clearance, there is no timetable for such clearance or guarantee that counsel will be granted it. Sequestration may further delay the security clearance process. In the meantime, young Abdella Tounisi sits in the Municipal Correctional Center, waiting.

15. He will wait longer still because of the procedures set out in the proposed Supplemental Protective order—counsel will only be able to view classified information at a secure facility and likewise draft and file motions relating to this discovery there as well. Dkt. #31-1, pp. 13-15. Because of the incredible volume of discovery that is now classified, this task will necessarily prolong case preparations.

16. Moreover, in the context of this case, having cleared counsel is not a sufficient remedy to protect Mr. Tounisi's constitutional rights. Classified information can only be viewed by individuals with a security clearance—a status which Mr. Tounisi will never be granted. The proposed Supplemental Protective Order specifically forbids Mr. Tounisi from having access to the classified information in this case. Dkt. #31-1, p. 7. The disconnect between

what cleared counsel knows and what she may share with her client raises a host of constitutional issues, compounded by the volume of classified content here.

17. The fact that counsel may achieve clearance does not allow Mr. Tounisi to comprehend the bulk of evidence and competently determine how he wishes to resolve his case in light of such evidence. These constraints hamstring Mr. Tounisi's ability to work with his attorney to decide whether he wishes to bring pre-trial motions or invoke his right to speedy trial. Moreover, without access to his own statements, Abdella Tounisi cannot contextualize them for his lawyer, nor make an informed decision about whether to testify. Likewise, under the Government's proposed Supplemental Protective Order, defense counsel will not be able to develop defense theories or case strategy with the defendant because she will be unable to discuss the evidence with him. This lack of transparency renders important decisions regarding the potential outcome of his case exceedingly difficult. In short, without some form of access to the evidence, Mr. Tounisi cannot even determine which of his constitutional rights may be implicated.

18. The relationship between attorney and client is sacred one, built on trust and the free flow of information. A wedge is placed in that dynamic where the attorney has information that the client does not. These unnecessary strictures undermine that relationship and threaten to sow mistrust between

attorney and client in derogation of Abdella Tounisi's right to effective representation as secured by the Sixth Amendment.

19. Mr. Tounisi has the right to present a meaningful defense. Without being able to even understand the nature of the evidence against him and potential exculpatory evidence, Mr. Tounisi cannot meaningfully participate in his own defense in violation of his Sixth Amendment right to a fair trial and Fifth Amendment right to due process.

### D. At Minimum, the Government Must Provide Evidentiary Summaries, Substitutions, or Workable Redactions

20. Although under CIPA preventing a defendant from having access to the evidence against him has become increasingly normative, this case presents an unusual circumstance. The sheer volume of information that is currently classified threatens the constitutional rights of Mr. Tounisi.

21. Further, the Government does not merely seek to keep national security intelligence or sophisticated investigative methods from Mr. Tounisi. Rather, the Government has refused to even declassify Mr. Tounisi's own statements, which are patently discoverable. There is no justifiable reason that Mr. Tounisi should not be able to review his own statements. By definition, nothing in his statements could constitute information that he does not already have.

22. This example is representative of the Government's well-known "'proclivity for over-classification of information.'" *Ray v. Turner*, 587 F.2d 1187, 1209 (D.C. Cir. 1978) (Wright, C.J. concurring) (quoting Senator Howard Baker).

23. It appears that classified status of certain evidence in the instant case is a result of the Government's utilization of FISA to gather it. Balanced against the constitutional rights of the defendant, it should not prove difficult for the Government to redact the methods of investigation, investigating bodies, or other information that might impact likely ongoing undercover operations in the Chicagoland Arab and Muslim community. From preliminary conversations with the Government, it does not appear that there is any particular item of discovery that so threatens national security that it would ultimately prove impossible to declassify in some manner. It is therefore incumbent on the Government to produce CIPA summaries of the classified information so that counsel can actually begin to prepare the case at once.

24. Congress never intended for CIPA to undermine the Constitution such that a criminal defendant would not even have access to his own statements or discoverable information to which he is entitled. Rather, as the Seventh Circuit has noted, CIPA's fundamental purpose is to "protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial." *United States v. Dumeisi,* 424 F.3d 566, 578 (7th Cir. 2005) (internal quotations omitted).

25. It remains the Government's burden to produce discoverable information pursuant to Fed. R. Crim. P. 16. Moreover, CIPA does not diminish the Government's obligations to disclose exculpatory or impeaching information under *Brady v. Maryland*, 373 U.S. 83 (1963). *United States v. Moussaoui,* 2003 WL 22258213 at *2 (E.D. Va. Mar. 10, 2003) (holding that *Brady* principles apply in the CIPA context).

26. As a procedural statute, CIPA contemplates creative solutions to the inherent tension between the Government's power to classify information and the defendant's constitutional rights. 18 U.S.C. App. III § 4 (Court may allow summaries of certain evidence upon proper showing by the Government). *See also United States v. Abu Marzook*, 435 F. Supp. 2d 708, 745 (N.D. Ill. 2006) (St. Eve, J.) (citing *United States v. North*, 713 F.Supp. 1452, 1453 (D.D.C.1989) and *United States v. Libby*, 429 F.Supp.2d 18, 22–23 (D.D.C.2006)).

27. While the Government may have a privilege against the disclosure of classified information, it "'must give way under some circumstances to a criminal defendant's right to present a meaningful defense.'" *United States v. Hanjuan Jin*, 791 F. Supp. 2d 612, 618 (N.D. Ill. 2011) (Castillo, J.) (quoting *United States v. Aref,* 533 F.3d 72, 78 (2d Cir. 2008)).

28. For example, in *United States v. El-Mezain*, defendants were given access to declassified summaries of: intercepted calls, all of the calls that the government intended to use at trial, and the entire contents of four of the

FISA intercepts.  664 F.3d 467 (5th Cir. 2011).  In *United States v. Ahmed*, the court entered a protective order permitting the government to substitute the approved summary of the classified documents in lieu of the classified documents themselves.  No. 10 Cr. 131 (PKC), 2011 WL 4915005 (S.D.N.Y. Sept. 23, 2011); *accord United States v. Rosen*, 520 F. Supp. 2d 786 (E.D. Vir. 2007) (holding that certain classified material was relevant and allowing the government to submit summaries, redactions, and substitutions in lieu of that classified material).

29.  In this district, courts have recognized that a defendant's constitutional rights cannot be unfairly compromised by the assertion of a Government interest in secrecy.  For instance, in *United States v. Abu Marzook*, the district court ensured that the defendant was provided with substitutions and summaries of evidence.  435 F. Supp. 2d 708, 745 (N.D. Ill. 2006) (St. Eve, J.).  In *United States v. Dumeisi*, the defendant received declassified summaries of evidence.  424 F.3d 566, 577 (7th Cir. 2005).

30.  The Government's choice to indict Mr. Tounisi necessarily means that the Government must also disclose information, at least in summary form, to him.  As the Supreme Court has explained, "the Government can invoke its evidentiary privileges only at the price of letting the defendant go free.  The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its

governmental privileges to deprive the accused of anything which might be material to his defense." *Jencks v. United States*, 353 U.S. 657, 671 (1957).

31. The Government notes that should the Court wish to understand the nature of the discovery at issue, the Government could present that information for *ex parte* in camera. Entertaining the unilateral perspective of the Government with regard to what is relevant, material, and helpful to the defendant creates a distortion of our adversarial system. As the district court noted in *Abu Marzook*:

> "It is a matter of conjecture whether the court performs any real judicial function when it reviews classified documents in camera. Without the illumination provided by adversarial challenge and with no expertness in the field of national security, the court has no basis on which to test the accuracy of the government's claims."

*United States v. Abu Marzook*, 412 F. Supp. 2d 913, 921 (N.D. Ill. 2006) (quoting *Stein v. Dep't of Justice & Federal Bureau of Investigation*, 662 F.2d 1245, 1259 (7th Cir. 1981)).

32. Given the foregoing, the Government should demonstrate why it cannot declassify discoverable, relevant materials or provide summaries or functional substitutions of classified evidence.

33. Abdella Tounisi objects to the Government's proposed Supplemental Protective Order because it does not advance discovery in this case and because the overwhelming amount of classified information prevents Mr. Tounisi from adequately preparing his defense and threatens his right to fair

trial and meaningful counsel.  The burden remains on the Government to show why this evidence cannot be declassified, a burden it cannot sustain.

34.     Consequently, Abdella Tounisi seeks full access to the evidence against him, including, at minimum, his own statements.  In the alternative, Mr. Tounisi respectfully requests that the Court order the Government to produce workable substitutions, redactions, or summaries of classified information as soon as practicable so as not to further delay case preparations.

WHEREFORE, ABDELLA TOUNISI respectfully requests that the Court deny or modify the proposed Supplemental Discovery Order so as to protect and effectuate the Defendant's Sixth Amendment right to effective counsel and a fair and speedy trial as well as his Fifth Amendment right to due process.


Dated:       September 25, 2013                Respectfully submitted,


                                               s/   Molly Armour
                                               Attorney for Abdella Tounisi


Molly Armour
Law Office of Molly Armour
4050 N. Lincoln Avenue
Chicago, IL 60618
(773) 746-4849

# CERTIFICATE OF SERVICE

_____

Molly Armour, attorney for the Defendant Abdella Tounisi, hereby certifies that **Defendant Abdella Tounisi's Response to the Government's Motion for a Supplemental Protective Order to Govern Classified Discovery** was served on all parties on September 25, 2013, in accordance with Fed.R.Crim.P. 49, Fed.R.Civ.P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.


        s/   Molly Armour


Law Office of Molly Armour
4050 N. Lincoln Avenue
Chicago, IL 60618
(773) 746-4849