UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 13 CR 328 |
| | ) | |
| v. | ) | Hon. Samuel Der-Yeghiayan |
| | ) | |
| ABDELLA AHMAD TOUNISI | ) | |

**Government's Reply in Support of Motion for a
Supplemental Protective Order to Govern Classified Discovery**

The United States, through its attorney, Gary S. Shapiro, United States Attorney for the Northern District of Illinois, respectfully submits this Reply to Defendant's Opposition to the Government's Motion to Enter a Supplemental Protective Order to Govern Classified Discovery in this case (Doc. #31 and #34).

**Background**

The defendant has been charged with providing material support to a designated terrorist organization, in violation of Title 18, United States Code, Section 2339B, and with making materially false statements to a federal officer in a matter involving international terrorism, in violation of Title 18, United States Code, Section 1001. (Doc. #15).

Consistent with its obligations, the government has tendered a significant volume of materials, including items that have been declassified and are available for the defendant to review. There exists, however, a body

classified material that it cannot declassify, thus the government seeks to make that material available to cleared defense counsel. To facilitate that process, the government seeks entry of the proposed supplemental protective order to govern the handling of any classified material disclosed to defense counsel.

## Argument

The defendant opposes the government's motion, demanding that the government explain why it cannot declassify all discoverable material in the case and insisting that the proposed protective order violates defendant's Fifth and Sixth Amendment rights to effective representation, a fair and speedy trial, due process, and meaningful participation in his defense. As explained below, these arguments are meritless. The production of classified information as proposed by the government follows standard protocol under the Classified Information Procedures Act (CIPA), procedures whose constitutionality have been routinely upheld.

### A.     The Proposed Procedure

In this case, the government seeks to produce classified information in electronic form to cleared defense counsel under a protective order issued pursuant to Section 3 of CIPA. Defense counsel may review the material on a classified laptop in a secure area established by the Court Information Security Officer, as set forth in paragraph 19 of the Proposed Supplemental

Protective Order. Defense counsel may identify particular items she believes the defendant needs to review, and inform the government of those items. The government will submit the items to the FBI for a declassification review, provided the requests are reasonable. If the FBI determines a particular item should not be declassified or if any other issue arises, the parties will address the matter with the Court under the provisions of CIPA. If the FBI declassifies the requested items, a declassified version will be provided to defense counsel to share with the defendant. The declassified items are to be handled according to the provisions of the original Protective Order (Doc. # 27). This process has been used in other cases (*see, e.g.*, *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011)), and appropriately protects sensitive and classified discovery material while still allowing the defendant to meaningfully participate in the preparation of his defense.

### B. Classification of Information is a Matter Committed Solely to the Executive Branch

The defendant's motion rests on mistaken assumptions about the speed or ease with which items in the government's possession may be declassified. These arguments, along with claims that the government is "manipulating" its classification decisions to gain some type of tactical advantage in this matter, are groundless. (*See* Doc. #37, ¶10). Classification decisions are entrusted exclusively to the Executive Branch and are based solely on

calculations about the harm to national security that would arise if the information were to be declassified. The defendant's argument that the government should be required to "demonstrate why it cannot declassify" all of the material in this case finds no support in the law.

The government has a "'compelling interest' in withholding national security information from unauthorized persons in the course of executive business." *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988). As the Supreme Court has repeatedly stressed, courts have been "reluctant to intrude upon the authority of the Executive in . . . national security affairs." *Id.* at 530. Accordingly, courts have recognized that the determination of whether to classify information and the proper classification thereof is a matter committed solely to the Executive Branch: "The defendants want us to second guess in the first instance the Government's determination of what is properly considered classified information. We decline to do so." *El-Mezain*, 664 F.3d at 523 (citing *United States v. Abu Ali*, 528 F.3d 210, 253 (4th Cir. 2008)). "The government . . . may determine what information is classified. A defendant cannot challenge this classification. A court cannot question it." *United States v. Smith*, 750 F.2d 1215, 1217 (4th Cir. 1984), vacated on other grounds, 780 F.2d 1102 (4th Cir. 1985); *United States v. Aref*, No. 04-CR-402, 2006 WL 1877142 at *1 (N.D.N.Y. July 6, 2006); *United States v. Musa*, 833 F.Supp 752, 755 (E.D. Mo. 1993). "[U]nder the separation of powers created

4

by the United States Constitution, the Executive Branch has control and responsibility over access to classified information." *People's Mojahedin Organization of Iran v. Department of State*, 327. F.3d 1238, 1242 (D.C. Cir. 2003).

It is not uncommon for the government's discovery obligations to be satisfied by providing classified material to cleared defense counsel. *See* Federal Judicial Center, *National Security Case Management* (2011) at 17 ("Courts have found it proper for the government to share classified information with defense attorneys who have security clearances even if the attorneys cannot share the information with their clients"); *see also United States v. Rezaq*, 156 F.R.D. 514 (D. D.C. 1994) (noting that "sensitive information is generally more useful to [defense] counsel than to [the defendant]"); *United States v. Ahmed*, 2011 WL 4915005 (S.D.N.Y. Sept. 23, 2011); *United States v. Moussaoui*, 591 F.3d 263 (4th Cir. 2010); *United States v. Bin Laden*, 2001 WL 66393 (S.D.N.Y. Jan. 25, 2001); *United States v. Hashmi*, 621 F.Supp.2d 76 (S.D.N.Y. 2008); *United States v. Sattar*, 272 F.Supp.2d 348 (S.D.N.Y. 2003). Moreover, and contrary to defendant's assertion, it is not unprecedented for the government to produce a significant

5

volume of discovery materials in classified form. *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011).[1]

The classification decisions made by the Executive Branch deserve deference even where some, but not all, discoverable classified information is declassified before production. For instance, the Court in *El-Mezain* found that the government properly invoked the national security privilege even though it had declassified only some of the electronic intercepts in that case and had revealed the fact that FISA surveillance occurred in that case. *See El-Mezain*, 664 F.3d at 523 ("[T]he fact that the Government determines that declassification of *some* of the communications will not harm national security does not *ipso facto* mean that declassification of *all* communications would have the same effect.") (emphasis in original). The government's decision to declassify only a portion of the discoverable materials may, for

---

[1] The language contained in CIPA Section 3 actually mandates the entry of a protective order upon motion by the United States to protect against the unauthorized disclosure of any classified information that is disclosed by the government to a defendant. Specifically, Section 3 provides that "upon motion of the United States, the court *shall* issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court in the United States." 18 U.S.C. App. 3 § 3 (emphasis added). Thus, Section 3 was intended to "codify the well-established practice, based on the inherent authority of federal courts, to issue protective orders." *United States v. Pappas*, 94 F.3d 795, 801 (2d Cir. 1996)) (quoting H.R. Rep. No. 96-831, at 26 (1980)), as well as to supplement the district court's authority under Rule 16(d)(1) to issue protective orders in connection with the discovery process. In contrast to Fed. R. Crim P. 16(d)(1)'s discretionary authority, CIPA Section 3 "makes it clear that protective orders are to be issued, if requested, whenever the government discloses classified information to a defendant in connection with a prosecution, e.g., *Brady* and *Jencks* material." *Id.* (quoting same).

6

instance, protect equities that go beyond the actual contents of conversation. *See United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989) ("Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods.").

The supplemental protective order and the government's proposed procedures are routine measures that have been used in similar cases and comply with CIPA.

### C. The Proposed Protective Order Does Not Deprive Tounisi of His Fifth and Sixth Amendment Rights

Courts have rejected the argument that a defendant's inability to review the classified information produced to his cleared counsel violates his Sixth Amendment right. Rather, they have concluded that such a process "properly balance[s] the defendants' need to mount a defense with the Government's need to protect classified information." *El-Mezain*, 664 F.3d at 525.

The defendant claims that his inability to access classified discovery will prevent him from adequately preparing for his defense, but his right to counsel is not absolute. *See Morris v. Slappy*, 461 U.S. 1, 11 (1983) ("Not every restriction on counsel's time or opportunity to investigate or to consult

7

with his client or otherwise prepare for trial violates a defendant's Sixth Amendment right to counsel."). The right to counsel may, in appropriate circumstances, give way to other interests – including cases that do not even involve classified information. *See, e.g.*, *United States v. Herrero*, 893 F.2d 1512, 1524-27 (7th Cir. 1990) (allowing order barring defense counsel from disclosing to the defendant the fact that the government had interviewed a person whose informant status was unknown to the defendant); *Morgan v. Bennett*, 204 F.3d 360, 365 (2d Cir. 2000) ("The court may not properly restrict the attorney's ability to advise the defendant unless the defendant's right to receive such advice is outweighed by some other important interest."); *United States v. Pelton*, 578 F.2d 701, 707 (8th Cir. 1978) (affirming Rule 16(d) protective order allowing Government not to turn over recorded conversations of defendant).

Courts have embraced this same reasoning in cases involving classified information. In *United States v. Moussaoui*, the Fourth Circuit found that defendant fell "well short of demonstrating that his guilty plea was entered under circumstances amounting to 'no assistance of counsel' at all" when he elected to plead guilty despite his inability to review classified information that had been made available to his attorneys. *Moussaoui*, 591 F.3d at 289 (finding that the restrictions on counsel's ability to communicate with Moussaoui were "not so onerous as to render counsel effectively absent

8

during the guilty plea proceeding"). "In certain contexts there can be an important need to protect a countervailing interest, which may justify a restriction on defendant's ability to consult with his attorney if the restriction is carefully tailored and limited." *Id.* (quoting *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 127 (2d Cir. 2008)).

Producing classified information to cleared defense counsel is an appropriate measure that protects classified information without prohibiting all communication between a defendant and his attorney. In *United States v. Ahmed*, the district court found that the defendant's inability to review classified information that had been made available to defense counsel did not violate the Sixth Amendment because, among other reasons, (1) the national security concerns in the case were "grave" and justified exclusion of the defendant from review of the classified documents, and (2) cleared defense counsel had reviewed the documents and had wide latitude to make inquiries of the defendant about the topics in the documents without disclosing classified information. *United States v. Ahmed*, 2011 WL 4915005 (S.D.N.Y. Sept. 23, 2011) at *4-5. Moreover, speculative claims by the defense have failed when they do not specify the reason that the defendant will be harmed by his inability to review the classified information with his attorney. *United States v. Bin Laden*, 2001 WL 66393 (S.D.N.Y. Jan. 25, 2001) ("While the Defendant suggests that disclosure might enable him to assist counsel in

9

making decisions about his representation, this hypothetical benefit is insufficient to warrant a finding that the application of CIPA in this case is unconstitutional.").

Given the national security risk that would arise from the disclosure of the classified information in this matter, the government's proposed protective order ensures the protection of sensitive, classified discovery without violating the defendant's constitutional right to prepare his defense. To the extent that defendant's response seeks production of summaries or substitutions of classified information so that the defendant may review material essential to his defense, those requests would be rendered moot by the process proposed by the government.

## Conclusion

For the reasons discussed above, the government's motion for a supplemental protective order should be granted.

October 2, 2013

Respectfully submitted,
GARY S. SHAPIRO
United States Attorney

By:     s/*William E. Ridgway*
         WILLIAM E. RIDGWAY
         BARRY JONAS
         Assistant U.S. Attorneys
         219 South Dearborn Street, Fifth Floor
         Chicago, Illinois 60604

10