Date: 1/~~00~~/25
20

FILED

JAN 24 2025 KW

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

United States District
Court for the Northern
District of Illinois

| | | |
|---|---|---|
| United States of America | ) | The Hon. Judge Andrea R. Wood |
| v. | ) | |
| Abdella Ahmad Tounisi (B.O.P. # 43307-424) | ) | 13 cr 328 |

"Motion Requesting a Judicial Recommendation Concerning Length of RRC/Halfway House Placement"

(1)

I respectfully request the Court to help me with my current situation. I feel like I'm stuck because I have 9 days until I'm eligible for ~~transfer~~ transfer to a halfway house but I have not been put in for it. I was told by my case manager in the end of Sept. '24 that I will be put in for a transfer to a low security prison. I sent an e-mail to my unit team in Nov. '24 asking about the status of my transfer and I was informed my transfer was denied. I sent another email right after that asking for halfway house placement and I did not receive a response. I then spoke to my case manager in Dec. '24 about my halfway house placement and he said that my transfer to a low security prison is actually still pending. I mentioned that I'd be eligible for halfway house in Jan. '25. He said that I 1st need to go to the low then ask for halfway house placement. It has nearly been 4 months and a lot of other inmates got put in for transfers after I was put in and they left not long after that. The problem with the delay in my transfer is that it is also delaying halfway house placement. I also spoke to many inmates that are under the 2nd Chance Act, like myself, and they all got put in for halfway house about 18 months before their projected release date. They also received a halfway house date that is approx. 10% of their sentence but no more than 12 months. I'm a year away from my projected release date and I don't know when I'll be put in. I don't even know who to believe about my transfer if it has really been denied or I'm truly pending transfer.

I believe that I need as much halfway house time as I can receive (12 months) because I've been in prison since I was 18 and I never lived an adult life as a free person. I believe I need to transition to society. I don't want to be thrown out of prison without the help I can receive in a halfway house. I know 3 people with cases similar to mine who received 15 years, 20 years and 20 years but only received 4 months, 3 months and 0 months halfway house, respectively.

②

I've included a case (4 pages) that is similar to mine where a Court granted a motion to recommend 12 months halfway house. U.S.A. v. Zubair Ahmed N. Dist. of Ohio, 2017. Like Ahmed I've taken numerous courses/classes over the years such as Yoga, A.C.E., Budgeting, ACT WorkKeys, Servsafe Management and a job Fair. I've also never had a serious incident report since my arrest nearly 12 years ago.

I look forward to putting this behind me. I plan on looking into and applying to Probation Office programs that were explained to us during a Probation Seminar. I also plan to take business related courses and to start my own business.

Thanks,

I handed this motion to my C.O. on 1/20/25. I swear under perjury that the above is true to the best of my knowledge.

Abdella Tounisi
#43307-424
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

③

United States of America, Plaintiff, v. <u>Zubair Ahmed (B.O.P. Inmate 19303-424)</u>, Defendant,
UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, WESTERN
DIVISION
2017 U.S. Dist. LEXIS 185276
Case No.: 1:07CR00647
November 8, 2017, Filed

**Editorial Information: Prior History**

United States v. Zubair Ahmed, 587 F. Supp. 2d 853, 2008 U.S. Dist. LEXIS 106840 (N.D. Ohio, Nov. 25, 2008)

**Counsel** {2017 U.S. Dist. LEXIS 1}For United States of America, Plaintiff: Thomas E. Getz, LEAD ATTORNEY, Former Assistant U.S. Attorney, Northern District of Ohio; David I. Miller, Jerome J. Teresinski, U.S. Department of Justice - Counter Terrorism Section, Washington, DC; Gregg N. Sofer, Office of the U.S. Attorney - Austin, Austin, TX; Jolie F. Zimmerman, U.S. Department of Justice - Counterterrorism Section, Washington, DC; Justin E. Herdman, Matthew W. Shepherd, Office of the U.S. Attorney - Cleveland, Northern District of Ohio, Cleveland, OH.

**Judges:** James G. Carr, Senior United States District Judge.

**Opinion**

**Opinion by:** James G. Carr

**Opinion**

**ORDER**

Defendant pleaded guilty to and was convicted of conspiring to provide material support to terrorists in violation of 18 U.S.C. § 2339A. His base offense level was 43 (deemed 52 for sentencing purposes). Defendant had never been arrested before this offense, but received a criminal history category of IV due to the nature of the crime. This resulted in a Guideline Range of 360 months to life imprisonment.

I sentenced defendant on June 10, 2010, to a term of 120 months, with three years supervised release to follow. The defendant's "out date" is August 17, 2018.

He has filed a *pro se* "Motion Requesting a Judicial Recommendation{2017 U.S. Dist. LEXIS 2} Concerning Length of RRC/Halfway House Placement." (Doc. 207). The government opposes the motion. (Doc. 208).1

For the reasons that follow, I grant the motion and recommend that the Bureau of Prisons *forthwith* arrange for the defendant's release to a halfway house in his hometown, Chicago.

**Discussion**

Title18 U.S.C. § 3624(c)(1) authorizes the Bureau's Director to assign an inmate during the last months of his term (not to exceed twelve months) to a halfway house:

1yfcases                                         1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

43307424

The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Halfway house placement is "a mechanism to reduce recidivism." (Doc. 207, Ex. 2 (Bureau of Prisons Director's Memorandum for Chief Executive Officers: "Revised Guidance for Residential Reentry Center (RRC) Placements")). The Second Chance Act instructs that an inmate's placement should be "of sufficient duration to provide the greatest likelihood{2017 U.S. Dist. LEXIS 3} of successful reintegration in the community." 18 U.S.C. § 3624(c)(6)(C). Although the Director is ultimately responsible for defendant's placement, the Bureau must consider "any statement" I make "recommending a type of penal or correctional facility as appropriate." *See* 18 U.S.C. § 3621(b)(4)(B).

The government's principal contention appears to be that the defendant, in light of the nature of his conviction, deserves no leniency and should not return to his home community until the latest date (usually six months prior to expiration of the term) as of which the Bureau would place him in the halfway house to prepare for release from custody.

I disagree with the government for several reasons.

First: the government says I do not know what the defendant's conduct has been in prison. So saying, the government ignores the courses that defendant has taken on subjects as diverse as Aquiculture and Organic Farming to Computer Applications, Financial Literacy, and Technology 101 to Stress Management and Decision-Making to College Correspondence Courses and Spanish.

More to the point, the government offers no evidence as to the defendant's conduct, good or bad, while in custody. But the government certainly could have found out what his record{2017 U.S. Dist. LEXIS 4} as an inmate was. Its silence in that regard is telling.

Second: with an "out date" one month short of two years before his imposed term ends on July 12, 2020, it is readily apparent that the defendant has substantial good time credit.2

That fact, like the government's silence, is telling. Indeed, it suggests that the professed ignorance about the defendant's conduct in prison is not just telling; it appears disingenuous.

Admittedly, the defendant's crime was serious. I took that fact expressly into account at sentencing. I suggest, though, that now is not the time to give, as the government does, too much heed to that factor.

What really matters at this point is assessment of what, if any risk, the defendant poses to the community. Given his apparent rehabilitation, as evidenced by his good time credit and educational pursuits, further imprisonment is simply punitive.

Punishment for punishment's sake is not a § 3553(a) factor.

Nor should or could it be in a penal system in the service of the Rule of Law. Demanding that the defendant remain in prison until the last grain of sand in the hour glass has run down, the government, it seems to me, has no real motivation other than punishment.

To be sure,{2017 U.S. Dist. LEXIS 5} the government professes concern about community safety. While that is, of course, a core concern, the government offers nothing to substantiate its apprehension.

1yfcases                                    2

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

43307424

The defendant will return to Chicago at some point. Is there any reason to believe that hastening his return by few months (during which he'll still be confined under Bureau control) endangers anyone? The government offers, and I see none.

Instead, I believe that an early start on reentry within the halfway house setting can enhance the likelihood of an uneventful period of supervised release and long-term law-abiding behavior.

When he returns home, defendant will do so tarred with the indelible brush marks of one who wanted to provide substantial assistance to overseas terrorists. That stain will never wash off or be wiped away.

For someone so convicted, reentry will be especially difficult.

That being so, it makes better sense - and better serves the community - to allow the defendant to enter a halfway house now, rather than wait until the usual six months before the end of his term.

Delay, on the other hand, can serve no useful purpose, for the defendant or his community.

**Conclusion**

In light of the foregoing, I grant the defendant's{2017 **U.S. Dist. LEXIS 6**} motion and recommend that the Bureau of Prisons promptly end his prison confinement and transfer him to a Residential Reentry Center to begin the process of reentry into his home community.

It is, therefore, hereby

ORDERED THAT:

1. The defendant's Motion Requesting a Judicial Recommendation Concerning Length of RRC/Halfway House Placement (Doc. 207), be, and the same hereby is granted;

2. The United States Attorney shall on receipt of this Order, immediately forward it to the appropriate Bureau of Prisons officials responsible for deciding when to transfer prison inmates to halfway house custody; and

3. The Clerk shall serve a copy of this Order on the Warden of the Seagoville (Texas) Federal Correctional Institution and the defendant's Case Manager at that institution.

So ordered.

/s/ James G. Carr

Sr. U.S. District Judge

**Footnotes**

1

The defendant filed his motion on July 10, 2017; the government its response on July 18, 2017. Lest there be any doubt, the delay in deciding the motion was entirely inadvertent, due to my own oversight as to its pendency. The delay was by no means whatsoever intentional. Thus, no reader should infer that my tardiness in preparing and filing this order indicates any hesitancy on my part to grant the defendant's request. I regret my delay in addressing the defendant's motion; the consequences of that delay are, unfortunately, incurable.

2

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

43307424

Defendant can earn 42 or 54 days of good time credit per year, depending on the progress he makes toward earning a GED or high school diploma. *See* 28 C.F.R. § 523.20(c). With an "out date" twenty-three months short of the end date of the imposed term, I can infer that defendant may well have earned all the good time credit available to him.

1yfcases 4

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

43307424

Abdella Tounisi
#43307-424
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808



01/24/2025-19

INMATE
IDENTIFICATION
CONFIRMED



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL®

7019 2280 0001 1570 1248

⇔43307-424⇔
Northern Dist Court House
20th Floor
219 S Dearborn ST
Chicago, IL 60604
United States

RECEIVED

JAN 24 2025

THOMAS G. BR...
CLERK ...